http://www.va.gov/vetapp16/Files6/1644933.txt

Citation Nr: 1644933 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 11-17 936 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to an initial evaluation in excess of 10 percent, prior to September 26, 2014, for degenerative joint disease (DJD) of the right wrist with surgical scars.

2. Entitlement to an initial evaluation in excess of 30 percent, effective on and after September 26, 2014, for right wrist navicular fracture with nonunion and surgery with severe DJD (right wrist disability). 

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

D.M. Casula, Counsel

INTRODUCTION

The Veteran had active service from December 2000 to September 2009. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2010 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which granted service connection for DJD, right wrist, and assigned a 10 percent rating, effective September 30, 2009. 

In October 2013, the Veteran presented testimony at a Travel Board Hearing before the undersigned Veterans Law Judge. 

This appeal was processed using the Veterans Benefits Management System (VBMS) and the Virtual VA electronic claims file. Virtual VA contains the Board hearing transcript and other documents that are either duplicative of the evidence in VBMS or not relevant to the issue on appeal.

By December 2014 rating decision, the RO granted a 30 percent rating for right wrist navicular fracture with nonunion and surgery with severe DJD (previously rated as DC 5010-5215, DJD, right wrist), effective September 26, 2014. The Board also notes that in December 2014, the AMC (Appeals Management Center) referred the Veteran's right distal radial neuropathy as an inferred issue to the RO. Thus, that issue is not before the Board at this time.

FINDINGS OF FACT

1. Prior to September 26, 2014, the Veteran's right wrist disability was manifested by symptoms including limitation of motion that more nearly approximated favorable ankylosis in between 20 and 30 degrees dorsiflexion. 

2. For the entire appeal period, the Veteran's service-connected right wrist disability has been manifested by no more than favorable ankylosis in 20 degrees to 30 degrees of dorsiflexion. 

CONCLUSIONS OF LAW

1. Resolving any reasonable doubt in favor of the Veteran, the criteria for a 30 percent rating, prior to September 26, 2014, for the right wrist disability have been approximated. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.7, 4.71a, DC 5003, 5010, 5214, 5215 (2015).

2. The criteria for a rating in excess of 30 percent, effective prior to and from September 26, 2014, for the Veteran's right wrist disability, have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321, 4.7, 4.71a, DC 5003, 5010, 5214, 5215 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. For the issues decided in the instant document, VA provided adequate notice in a letter sent to the Veteran in December 2009.

Additionally, in October 2013, the Veteran was provided an opportunity to set forth his contentions during a hearing before the undersigned Veterans Law Judge (VLJ). A VLJ who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 38 C.F.R. § 3.103(c)(2) (2015); Bryant v. Shinseki, 23 Vet. App. 488 (2010). Here, during the October 2013 hearing, the undersigned VLJ stated the issues on appeal, and information was also solicited regarding the severity of the Veteran's right wrist disorder as well as any recent treatment received. Nothing gave rise to the possibility that evidence had been overlooked with regard to the Veteran's claims. Furthermore, the appeal was remanded to obtain additional treatment records and a current VA examination. As such, the undersigned VLJ complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and the Board may proceed to adjudicate the claim based on the current record. 

The Board also finds VA has satisfied its duty to assist the Veteran in the development of the claims. VA has obtained all identified and available service and post-service treatment records for the Veteran. Additionally, VA examinations were obtained in July 2011 and September 2014, which included a review of the claims folder and a history obtained from the Veteran, and examination findings were reported, along with diagnoses/opinions, which were supported in the record. These VA examination reports are adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 310-11 (2007). It appears that all obtainable evidence identified by the Veteran relative to his claim has been obtained and neither he nor his representative has identified any other pertinent evidence which would need to be obtained for a fair disposition of this appeal. 

In August 2014, the Board remanded this matter to obtain relevant medical records as well as a VA examination. A September 2014 letter was sent to the Veteran requesting an authorization and consent to release form for a specific private provider as noted in the August 2014 Board remand. The Veteran did not respond. It appears there were no additional treatment records. A September 2014 VA examination was obtained. There has thus been substantial compliance with the remand directives. Stegall v. West, 11 Vet. App. 268 (1998).
 
No further notice or assistance is required to fulfill VA's duty to assist in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002).

The Board concludes that VA has satisfied its duty to assist the Veteran in apprising him as to the evidence needed, and in obtaining evidence pertinent to his claims under the VCAA. No useful purpose would be served in remanding this matter for yet more development. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

Disability evaluations are determined by application of the VA Schedule for Rating Disabilities, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Each disability must be viewed in relation to its history and there must be emphasis upon the limitation of activity imposed by the disabling condition. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. 

Where entitlement to compensation has been established and a higher initial disability rating is at issue, the level of disability at the time entitlement arose is of primary concern. Consideration must also be given to a longitudinal picture of the veteran's disability to determine if the assignment of separate ratings for separate periods of time, a practice known as "staged" ratings, is warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran essentially contends he should be entitled to higher ratings for his service-connected right wrist disability, prior to and effective from September 26, 2014. His service-connected right wrist disability involves his right major upper extremity as he is right-handed. See 38 C.F.R. § 4.69 (2015). His right wrist disability encompasses orthopedic impairment only and has been rated pursuant to Diagnostic Codes (DCs) 5003, 5010, 5214, and 5215. 38 C.F.R. § 4.71a. 

In that regard, a February 2010 rating decision granted service connection for DJD, right wrist, and assigned an initial 10 percent rating, effective September 30, 2009, pursuant to DC 5010-5215. A December 2014 rating decision granted a 30 percent rating for right wrist navicular fracture with nonunion and surgery with severe DJD, effective September 26, 2014, pursuant to DC 5003-5214. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned. In that regard, DC 5010 addresses arthritis due to trauma and is rated as degenerative arthritis under DC 5003 which provides that arthritis is rated under the appropriate diagnostic code for the joint or joints involved. DCs 5214 and 5215 govern limitation of motion of the wrist.

On a VA examination in January 2010, the Veteran reported almost no range of motion of the wrist and decreased wrist strength. He tried to do as many tasks as possible with his left hand, but was not able to write legibly with his left hand yet. He wore a right wrist brace for activities to try to decrease the pain, and did have some increased limitation with repetitive use. He did not have incapacitating flare-ups of pain. It was noted that he was employed as a test engineer and his wrist did not interfere with his work. He was independent in his activities of daily living. Examination revealed multiple healed scars on the dorsum of the wrist. There was tenderness on the dorsum of the wrist and the anatomic snuffbox, and the wrist had very limited range of motion, to include dorsiflexion to 10 degrees, volar flexion to 5 degrees, radial deviation 0 degrees, and ulnar deviation to 10 degrees. Right grip strength was 4/5. Repetitive motion of the wrist was done through this very limited range and there was no pain, no additional loss of motion, and no additional weakness, fatigability or incoordination. The diagnosis was DJD right wrist.

Private treatment records show that in October 2010 the Veteran was seen for right wrist pain, and it was noted that he had been advised in the past that he will need a probable 4-corner fusion as well as a complete wrist fusion. Examination revealed tenderness to palpation around the wrist, with no obvious swelling, and a well-healed surgical incision. His flexion and extension were actually fairly limited, and he did have pain with radial deviation and pain with palpation around his radioscaphoid joint. His sensation distally is intact, and no obvious deformity was noted. The impression was complex wrist arthrosis, likely posttraumatic, and the Veteran was having significant stiffness related to his arthrosis. It was thought that ultimately the Veteran will need fusion, but that at this point as long as he can tolerate his pain with occasional anti-inflammatories he did not need that.

In a February 2011 VA examiner addendum to the January VA examination, the examiner noted that the Veteran's right wrist had very little motion, but was not ankylosed. The wrist scars were typical asymptomatic surgical scars that were freely movable, nontender, without breakdown, and were neither raised nor recessed. 

On the VA examination in July 2011, the Veteran reported continued pain in the right wrist. His pain averaged 4 to 5 out of 10 on the pain scale. He reported that his pain will increase to 7, and on a good day his pain level was 3. He complained of occasional swelling, painful clicking, popping, a grinding sensation, and stiffness. There was no heat, redness, or locking. He noticed increased pain whenever he hits his wrist or sleeps on the wrist, and stated he was able to hold his wrist in extension and pull back, which caused mild pain. He complained of pain with pushing back on his wrist, as well as attempting to flex the wrist. He took Aleve and used Biofreeze gel, which provided mild relief, and he used a wrist brace when using the right hand. He was able to accomplish all of his activities of daily living, but stated he had to alter the way he did them and used his left hand more often. The examiner noted that the Veteran's job was affected and that he was able to do his work duties, but stated he did them more slowly and took frequent breaks. He had flare-ups that were activity dependent, and stated that if he hit his hand or used his hand excessively, this caused him to stop activities and rest the wrist, and that this occurred maybe two times per month. He also noticed dexterity changes with sloppier handwriting. He was treated by a civilian physician who recommended he may need a wrist fusion or joint replacement in the future. 

Objective examination of the right wrist revealed two well-healed dorsal scars that were highly mobile, did not adhere to the underlying tissue, and did not restrict motion, and had no keloid formation, hypertrophy, or subcutaneous tissue loss. Examination revealed good distal pulses and sensation was intact. There was tenderness to palpation at the base of the thumb, and the right hand grip was 4/5. The Veteran complained of pain with heavy gripping. There was no swelling, heat, or redness, and he could oppose all fingers to the thumb with mild difficulty, and pincher grip was 4/5. Range of right wrist motion was to 10 degrees on forward flexion, to 5 degrees on extension, to 12 degrees on ulnar deviation, and to 30 degrees on radial deviation, with pain at the endpoints of all motion. It was noted that the Veteran did not exhibit any additional loss due to pain, fatigue, weakness, lack of endurance or incoordination on repetitive motion testing, but he did complain of increased pain on repetitive motion testing. The assessment was right wrist scaphoid fracture status post open reduction internal fixation and bone grafting with posttraumatic degenerative changes.

At the October 2013 Board hearing, the Veteran testified that his overall range of motion of the right wrist, in any direction, was almost zero. At the hearing, the undersigned Veterans Law Judge reported that the Veteran held his arm straight up and attempted to move his wrist forward and backwards and that it looked like his wrist moved maybe a centimeter and was essentially barely moving. The Veteran's representative indicated that the based on that demonstration, it appeared that the Veteran did have ankylosis which was mentioned in the Medical Evaluation Board by the military, but conflicted with the VA examination in 2011. The Veteran also testified that he was a college student and had to type and used dictation software because he would otherwise end up with a swollen wrist. He indicated he had to ice his right wrist after prolonged writing. He indicated that every orthopedic surgeon from the Air Force told him that by the time he was 40 years old he would end up with a 4 point fusion or a complete wrist fusion and that it will collapse at an unknown point in time and he would need with emergency surgery. With regard to work, the Veteran testified that his boss had taken him off tasks requiring him to do heavy lifting or work of that nature, and he tended himself to limit any weight lifted at work. He also testified that his wrist was painful on a daily basis, and it got worse any time he used the wrist to lift. He took Aleve daily and his doctor had prescribed Voltaren gel which helped sometimes. He denied pain in the scar, but reported sometimes he felt the tendons moving in the scar. The Veteran also testified that the orthopedic surgeon in the past declined to make a specific determination between ankylosis and traumatic arthritis for his right wrist because the Veteran still used the wrist and that his using it would prevent the bones from fusing together and that it appeared the bones had started to fuse several times and had been fractured apart due to the Veteran hitting his wrist or having some sort of physical trauma. He also testified that in the past year he has had radiating pain from his right wrist, and reported that his orthopedic surgeon explained that the radiating pain was due to the wrist collapsing on itself and the bone deteriorating. 

In a September 26, 2014 VA examination report, the diagnosis was right wrist navicular fracture with nonunion and surgery x4, with residual peripheral neuropathy and severe DJD. It was noted that the Veteran was right-handed, had chronic pain and paresthesias, distal to the surgical site, since the initial surgery. He had increased pain with repetitive wrist activity, and was unable to do heavy lifting with the right hand. He worked at a relatively sedentary job without heavy manual labor, but was in college currently and retraining. He denied flare-ups that impacted the function of the wrist. Range of right wrist motion showed palmar flexion was to 0 degrees with pain and dorsiflexion was to 0 degrees with pain. He was able to perform repetitive-use testing with 3 repetitions, but did not have additional limitation in range of right wrist motion following repetitive-use testing. Functional impairment included less movement than normal, weakened movement, pain on movement, swelling, and deformity. He also had pain on palpation of the right wrist. Muscle strength was 4/5 on right wrist flexion and extension. It was noted that he had ankylosis of the right wrist, favorable in 20º to 30º dorsiflexion. He also had scars which were not painful or unstable. 

The examiner opined that the Veteran's wrist condition impacted his ability to work, noting he was unable to engage in heavy manual labor or highly repetitive use of the right wrist, but was able to engage in sedentary employment. X-rays revealed no acute fracture or dislocation; deformity of the scaphoid, radial styloid process, suggestive of prior fracture; moderate secondary osteoarthritis of the radioscaphoid articulation; and positive ulnar variance. The examiner opined that overall there had been no significant change from the examination in 2011. The examiner also noted that a flare-up of the Veteran's right wrist condition was not present at that time, and that it would be mere speculation to express the impact of a flare-up in terms of the degrees of additional range of motion lost due to pain, weakness, fatigability, or incoordination. 

Pursuant to DC 5214, a 30 percent rating is assigned for a major (dominant) wrist if there is favorable ankylosis of the wrist, in 20 degrees to 30 degrees dorsiflexion. A 40 percent rating is assigned if there is ankylosis of the major wrist in any other position, except favorable. 38 C.F.R. § 4.71a, DC 5214. 

Normal range of palmar flexion for the wrist is 80 degrees, and normal range of dorsiflexion is 70 degrees. Palmar flexion in line with the forearm equates to 0 degrees of palmar flexion or dorsiflexion. 38 C.F.R. § 4.71a, Plate I.

Entitlement to a rating in excess of 10 percent, 
prior to September 26, 2014

For this time period, the Veteran's right wrist disability is ranted pursuant to DC 5215, wherein a maximum 10 percent rating is warranted for limitation of motion of the wrist (major or minor), when dorsiflexion is less than 15 degrees or palmar flexion is limited in line with the forearm. 38 C.F.R. § 4.71a, DC 5215.

The Board initially notes that the Veteran is in receipt of the maximum rating for limitation of right wrist motion under DC 5215. Where a Veteran is in receipt of the maximum rating for limitation of motion of a joint, the provisions under DeLuca v. Brown, 8 Vet. App. 202 (1995) do not apply. See Johnston v. Brown, 10 Vet. App. 80 (1997). 

The Board has considered other potentially applicable diagnostic codes, however. See Schafrath v. Derwinski, 1 Vet. App. 589, 592-93 (1991) (holding that the Board must consider all potentially applicable regulatory provisions). Pursuant to DC 5214, a 30 percent rating is assigned for a major (dominant) wrist if there is favorable ankylosis of the wrist, in 20 degrees to 30 degrees dorsiflexion. A 40 percent rating is assigned if there is ankylosis of the major wrist in any other position, except favorable. 38 C.F.R. § 4.71a, DC 5214. Prior to September 26, 2014, the Veteran's service-connected right wrist disability has been primarily manifested by chronic pain and limitation of motion, and ankylosis was not shown during this period. However, considering the competent evidence of record, to include the Veteran's testimony in 2013, the Board finds that the criteria for a 30 percent rating under DC 5215 have been approximated. 38 C.F.R. § 4.7. In that regard, the Veteran testified at the Board hearing, as well as demonstrated, that his overall range of motion of the right wrist, in any direction, was almost zero. Furthermore, the September 2014 VA examiner found the Veteran's right wrist favorably ankylosed and stated that there had been no significant changes since the 2011 examination. Accordingly, in considering these findings as well as the Veteran's testimony, and affording him the benefit of any reasonable doubt, the Board concludes that prior to September 26, 2014, the limitation of motion and impairment caused by the Veteran's DJD of the right wrist has approximated favorable ankylosis of the wrist, in 20 degrees to 30 degrees dorsiflexion. Thus, a 30 percent rating is warranted prior to September 26, 2014. 

Entitlement to a rating in excess of 30 percent, 
prior to and effective from September 26, 2014

For this time period, the Veteran's right wrist disability is ranted pursuant to DC 5214, wherein a 30 percent rating is assigned for a major (dominant) wrist if there is favorable ankylosis of the wrist, in 20 degrees to 30 degrees dorsiflexion. A 40 percent rating is assigned if there is ankylosis of the major wrist in any other position, except favorable. A maximum 50 percent evaluation is assigned for unfavorable ankylosis in any degree of palmar flexion, or with ulnar or radial deviation. 38 C.F.R. § 4.71a, DC 5214. 

On and after September 26, 2014, the evidence shows favorable, but no unfavorable ankylosis or ankylosis is nay position other than 20 to 30 degrees dorsiflexion. The September 2014 VA examiner expressly found that the Veteran had ankylosis of the right wrist, favorable in 20º to 30º dorsiflexion. Prior to that time period, the VA examiners in 2010 and 2011 do not indicate ankylosis in any other position. Nor do the Veteran's statements support such a finding. In that regard, the Board notes that in 2010 and 2011, the Veteran retained the ability to move his wrist, albeit minimally and with difficulty, and in 2014, the VA examiner specifically made a finding of favorable ankylosis. Therefore, based on the lack of findings showing or approximating ankylosis in any position other than favorable in between 20 and 30 degrees dorsiflexion, the Board finds that a disability rating in excess of 30 percent is not warranted for the right wrist, either prior to or effective from September 26, 2014. 

The Board is aware of the Court's decision in Correia v. McDonald, 28 Vet. App. 158 (2016) (holding that § 4.59 requires that the listed range of motion testing be conducted to the extent practicable in all cases involving joint disabilities); however, given the Veteran is receiving the maximum rating based on limitation of motion of the wrist and higher ratings require unfavorable ankylosis, there is no prejudice in the VA examination not having conformed to 38 C.F.R. § 4.59 as interpreted in Correia. Additionally, the 2014 VA examiner conducted range of motion testing on the left wrist which was found normal.

The Board has also considered other possibly applicable rating criteria. But the evidence of record does not demonstrate that the wrist disorder causes any flail false joint, any marked deformity of the radius, any impairment of supination and pronation or other elbow and forearm symptoms. See 38 C.F.R. § 4.71a, Diagnostic Codes 5205-13 (2015). Finally, the Board notes that a separate rating is not warranted for scars of the right wrist, as objective examination have shown these scars to be nontender, stable, and not impairing function of the right wrist.

In sum, the preponderance of the evidence of record is against assigning a rating in excess of 30 percent for the service-connected right wrist disability, throughout the period on appeal. Fenderson v. West, supra. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable, and the claim for a rating higher than 30 percent for the service-connected right wrist, effective prior to and from September 26, 2014, must be denied. See 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-6 (1990).

Extraschedular Consideration

The Board has also considered the provisions of 38 C.F.R. § 3.321(b)(1). Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008). However, in this case, the Board finds that the record does not show that the Veteran's right wrist disability is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1).

The threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008). In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service- connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extra-schedular referral is required. Thun, 22 Vet. App. 111; VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those marked interference with employment and frequent periods of hospitalization. 38 C.F.R. § 3.321(b)(1).

The evidence in this case does not show such an exceptional disability picture that the assigned schedular evaluations for the service-connected disability are inadequate. Here, for the Veteran's right wrist disability, the impact of his symptoms such as pain, limitation of motion, and limits on functioning is specifically contemplated in the rating criteria, and the rating criteria provide for higher ratings for wrist disabilities. Hence, the rating criteria clearly contemplate the Veteran's disability picture. They include symptomatology of the type reported by the Veteran and by medical professionals on clinical evaluation. As such, the Board concludes that referral for extraschedular consideration is not warranted here. 

In addition, a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014). In this case, however, neither the Veteran nor the record has raised this contention. Yancy v. McDonald, 27 Vet. App. 484, 495 (2016).

ORDER

A 30 percent rating, prior to September 26, 2014, for the right wrist disability, is granted, subject to the laws and regulations governing the award of monetary benefits.

A rating in excess of 30 percent, effective prior to and effective from September 26, 2014, for the service-connected right wrist disability is denied. 

____________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs